848 P.2d 1108

Henry **MARTINEZ, Claimant–Appellant,**

v.

**SOUTHWEST LANDFILLS, INC., and Mountain States Mutual Casualty Company, Inc., Respondents–Appellees.**

No. 13590.

Court of Appeals of New Mexico.

Feb. 15, 1993.

Stephen E. McIlwain, Albuquerque, for claimant-appellant.

Robert Bruce Collins, Albuquerque, for respondents-appellees.

## OPINION

BIVINS, Judge.

Worker appeals the Workers' Compensation Administration's Compensation Order awarding him 22% temporary partial disability as a result of an accidental injury on March 19, 1989. He raises four issues: (1) whether substantial evidence supports the award of 22% temporary partial disability; (2) whether the Workers' Compensation Judge (WCJ) erred in not awarding Worker reimbursement for charges incurred by him for examination by a health care provider of his choice; (3) whether the WCJ erred in not transferring Worker's health care to the health care provider chosen by Worker; and (4) whether the WCJ erred in concluding that all disputes over benefits due before August 19, 1990, had been fully resolved by the recommended resolution of Worker's first claim. We decline to address the first issue challenging the sufficiency of the evidence because Worker failed to comply with the appellate rule governing such a challenge, SCRA 1986, 12–213(A)(3) (Repl.1992), and we affirm on the remaining issues. We take this opportunity to spell out the requirements for a challenge to the sufficiency of the evidence under the whole record review standard, and to explain why compliance is necessary.

We summarize the portions of the WCJ's decision relevant to this appeal. Employed as a heavy equipment operator for Employer, Worker suffered an accidental injury within the scope of, and in the course of, his employment on March 19, 1989. Employer provided medical care as well as rehabilitation services with the goal of assisting Worker in re-entering the job market. Employer also paid Worker temporary total disability benefits from the date of the accident until February 1, 1990. After Worker filed his first claim for benefits, he and Employer attended a mediation conference and entered into a stipulation providing, among other things, that Worker suffered a disability to some percentage as a result of his accidental injury; that Worker would accept 10% partial disability benefits from February 1, 1990, to August 12, 1990, in full settlement of his claim prior to the mediation conference; that Worker would receive temporary total disability benefits from August 13, 1990, until October 13, 1990, or until further order of the Workers' Compensation Administration; and that the parties would attempt to resolve the issue of permanent disability by October 13, 1990, and, failing to do so, either party could pursue a resolution of that issue. Unable to resolve the issue, Worker filed his second claim and, after a second mediated recommended resolution was rejected by Employer, the matter went to hearing before the WCJ.

As a result of that hearing, the WCJ awarded Worker 22% temporary partial disability benefits from February 1, 1990, until further order. The WCJ rejected Worker's claim for reimbursement for charges incurred for an independent medical examination by Dr. Racca, and also rejected Worker's claim that his medical care should be transferred to Dr. Racca. This appeal followed. The WCJ concluded that the law in effect in 1987 applies and the parties do not disagree.

### 1. *Substantiality of the Evidence*

■ Worker challenges the sufficiency of the evidence to support the award of 22% temporary partial disability benefits, claiming that he should have been awarded 100% temporary disability benefits. We decline to review this question because Worker has failed to comply with SCRA 12–213(A)(3) and related case law.

SCRA 12–213(A)(3) provides in pertinent part:

> A contention that a ... finding of fact is not supported by substantial evidence *shall be deemed waived* unless the summary of proceedings includes the substance of the evidence bearing upon the proposition, and the argument has identified with particularity the fact or facts which are not supported by substantial evidence.... (Emphasis added.)

Worker has not complied with this rule. The summary of proceedings portion of his brief-in-chief, as well as the argument portion, selectively set forth evidence which would support a different result. Worker acknowledges that Employer presented evidence concerning Worker's rehabilitation, medical evidence from the treating physicians, and evidence concerning Worker's disability. However, he neither provides us with the substance of this evidence or other evidence which would support the WCJ's findings on disability, nor states the reasonable inferences that could be drawn from the evidence, nor acknowledges how Employer's evidence could be viewed together with the evidence offered by Worker to support Worker's claim on appeal. Instead, Worker's brief-in-chief concentrates on the evidence he presented through Dr. Racca, as to impairment, and Dr. Krieger, as to disability.

Predictably, it was left to the opposing party to provide the missing evidence. This missing evidence includes testimony by job placement specialists, cross-examination testimony of Worker's disability specialist, medical evidence unfavorable to Worker's position, and most importantly, evidence of Worker's lack of cooperation in seeking reemployment. This last evidence undoubtedly influenced the award made by the WCJ.

Equally predictable, Worker, in his reply brief, for the first time, acknowledges apparent conflicts in the testimony of the two disability specialists, as well as other evidence brought to our attention by Employer. He then seeks to explain away this countervailing evidence. This reluctant unfolding of all the evidence commonly occurs where the appellant fails to comply with SCRA 12–213. Because of the frequency with which this occurs, we now set forth the appellant's responsibilities in challenging the sufficiency of the evidence under the whole record review standard, as required by the appellate rules and related case law.

■ In *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct. App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988), we went to some length to set forth the requirements for whole record review in administrative proceedings. Taking the teachings of that case together with SCRA 12–213, we believe that a challenge to the sufficiency of the evidence under whole record review involves a two-step process.

Step one. The party challenging the sufficiency of the evidence supporting a proposition must set forth the substance of *all* evidence bearing upon the proposition. SCRA 12–213 requires this. *See also Tallman*, 108 N.M. at 128, 767 P.2d at 367.

Step two. Once the challenging party has set forth the substance of all the pertinent evidence, the party must then demonstrate why, on balance, the evidence fails to support the finding made.

In setting forth the substance of all the pertinent evidence, the appellant, in order to make a convincing argument, must present all supporting evidence in the light most favorable to the agency's decision. This includes stating all reasonable inferences that can be drawn from the facts, while acknowledging that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not mean the agency's findings are unsupported by substantial evidence." *Id.* at 129, 767 P.2d at 368. This kind of presentation takes into account and recognizes the considerable deference the reviewing court must give to the agency's findings. As we stated in *Tallman*, "[t]he reviewing court starts out with the perception that all evidence, favorable and unfavorable, will be viewed in the light most favorable to the agency's decision." *Id.* This does not mean, however, that the party challenging the substantiality of the evidence is prohibited from pointing out deficiencies in the evidence that the decision maker below might have considered favorable.

Indeed, our second step contemplates that the appellant point out evidence that fairly detracts from the evidence relied upon by the decision maker in support of the challenged proposition. *See id.* The whole record review standard, unlike the traditional standard of appellate review, requires the reviewing court, in determining the substantiality of the evidence, to " 'take into account whatever in the record fairly detracts from its weight.' " *Id.* (quoting *Universal Camera Corp. v. National Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)). This permits the appellant, for example, to demonstrate why one expert's opinion should have been given more weight than another. Failure of an expert to have available all underlying facts needed to form a reasonable opinion is but one example of evidence lessening the weight of expert testimony. The bottom line, however, is that the appellant must persuade the reviewing court that "it cannot conscientiously say that the evidence supporting the decision is substantial, when viewed in the light that the *whole* record furnishes." *Tallman*, 108

N.M. at 129, 767 P.2d at 368 (emphasis added).

If there is compliance with the steps listed above, then the reviewing court should be able to rely entirely on the appellant's brief-in-chief in canvassing all the evidence bearing on a finding or a decision, favorable or unfavorable, and in deciding whether there is substantial evidence to support the result, using the approach we outlined in *Tallman*. SCRA 12–213 contemplates that the canvass and determination be made on the basis of appellant's presentation in the brief-in-chief. The appellee should likewise be able to rely on the brief-in-chief in arguing why, on balance, the finding or decision is supported by substantial evidence. Neither the appellee nor the reviewing court should have to supplement the appellant's presentation of the evidence.

The above procedure not only requires adroitness on the part of the challenging party, but also a high degree of forthrightness. The party must abandon the role of advocate for facts that were argued below and rejected, and assume the role of advocate for the law. After all, whether a finding is supported by substantial evidence is a question of law, not of fact. *Pickens–Bond Constr. Co. v. Case*, 266 Ark. 323, 584 S.W.2d 21, 25 (1979) (en banc), *cited in Neel v. State Distribs., Inc.*, 105 N.M. 359, 365, 732 P.2d 1382, 1388 (Ct.App.1986) (Donnelly, J., dissenting), *cert. quashed*, 105 N.M. 358, 732 P.2d 1381 (1987); *Ferreira v. Workmen's Compensation Appeals Bd.*, 38 Cal.App.3d 120, 112 Cal.Rptr. 232, 235 (1974). Once that role is assumed, it becomes easier for the appellant to more realistically evaluate the chances of success on appeal. This saves not only the time and resources of the party, but also the court's time and resources. This brings us to the purposes of SCRA 12–213.

The primary purposes of SCRA 12–213's requirements are to fully apprise the reviewing court of the fact-finder's view of the facts and its disposition of the issues, and to help the court decide the issues on appeal. *See, e.g., Stanton v. Bokum*, 66

N.M. 256, 259, 346 P.2d 1039, 1041 (1959) (explaining purpose of former appellate rules requiring a statement of facts in appellate briefs). In this regard, it is not the responsibility of the reviewing court to search through the record to determine whether substantial evidence exists to support a finding. *See Zengerle v. City of Socorro*, 105 N.M. 797, 802, 737 P.2d 1174, 1179 (Ct.App.1986), *cert. quashed*, 105 N.M. 781, 737 P.2d 893 (1987), *overruled on other grounds by Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 454, 827 P.2d 838, 842 (Ct.App.1991). That is the obligation of the appellant.

■ In fairness to Worker, when all three briefs are considered, there is some compliance with SCRA 12–213, however, as previously noted, neither the appellee nor the appellate court should have to search the record to determine the relevant facts bearing upon Worker's claim that the decision of the WCJ was not supported by substantial evidence. In addition, Worker's brief appears to rely on factual recitations made earlier during the calendaring process. Such reliance is to no avail because attempts to incorporate by reference arguments and authority contained in memoranda submitted in opposition to calendaring notices do not preserve matters not specifically argued in the briefs. *State v. Aragon*, 109 N.M. 632, 634, 788 P.2d 932, 934 (Ct.App.), *cert. denied*, 109 N.M. 563, 787 P.2d 1246 (1990). Moreover, based on the manner in which the evidence unfolded, in order to conduct a proper review, this Court would be required to examine substantially all of the record to determine which side's view of the proof is accurate. Judicial resources simply do not permit us to do this, and we believe that SCRA 12–213 is designed to avoid that endeavor and to place the responsibility with the appellant.

SCRA 12–213 has another purpose just as salutary as those already discussed. It obliges an appellant to carefully review all the evidence as a reviewing court would and then decide whether to pursue or discard a sufficiency challenge. SCRA 12–213 demands this winnowing process. Only after a party challenging the sufficiency of the evidence goes through the steps outlined above in a careful and candid manner can that party truly decide whether the issue is worth pursuing. As already noted, this process saves time and money when issues found to be without merit are discarded.

We recently had occasion to refuse to consider a challenge to the sufficiency of the evidence where the appellant failed to include the substance of all the evidence bearing upon a proposition. *See Maloof v. San Juan County Valuation Protests Bd.*, 114 N.M. 755, 845 P.2d 849 (Ct.App. 1992). Although *Maloof* was decided under the traditional standard of review, the same principles enunciated there apply to whole record review. In *Maloof*, we said that an appellant is bound by the findings of fact made below unless the appellant properly attacks the findings, and that the appellant remains bound if he or she fails to properly set forth all the evidence bearing upon the findings. *Id.*, 114 N.M. at 759–760, 845 P.2d at 853–54; *see also In re Estate of McKim*, 111 N.M. 517, 521, 807 P.2d 215, 219 (1991); *Henderson v. Henderson*, 93 N.M. 405, 407, 600 P.2d 1195, 1197 (1979); *Galvan v. Miller*, 79 N.M. 540, 545–46, 549, 445 P.2d 961, 966–67, 970 (1968); *Giovannini v. Turrietta*, 76 N.M. 344, 346–47, 414 P.2d 855, 856–57 (1966); *State ex rel. State Highway Comm'n v. Pelletier*, 76 N.M. 555, 559, 417 P.2d 46, 48 (1966).

Therefore, deciding that Worker has waived his right of review on this issue, we affirm the WCJ's finding as to temporary partial disability.

2. *Reimbursement for Medical Costs*

■ NMSA 1978, Section 52–1–51(E) (Repl.Pamp.1991), allows for reimbursement of Worker for the cost of an examination by a physician or other health care provider of his choice provided "the *final determination* of the worker's claim is that the worker's claim of impairment is correct and differed from the employer's physician's opinion of percentage of impairment by more than twenty percent." (Emphasis added.) Worker argues that because the WCJ found that "Worker has a

temporary physical impairment as determined by Dr. Racca," and because Dr. Racca opined an impairment rating of 50%, which was more than 20% greater than the impairment rating given by Employer's physicians, the WCJ was required to order reimbursement for the cost of Dr. Racca's examination, including the discogram. We disagree.

Employer's physicians rated Worker's impairment at 7%. Worker arrives at a percentage difference greater than 20% by relying on Dr. Racca's opinion that Worker's impairment rating was 50%, and on the WCJ's finding accepting Dr. Racca's determination that Worker had a temporary physical impairment. Worker reasons that because the WCJ accepted Dr. Racca's determination of physical impairment, he necessarily accepted Dr. Racca's determination of the *percentage* of impairment.

█ Worker's reasoning, however, is contrary to the rule that findings are to be construed in support of the judgment, *see Sheraden v. Black*, 107 N.M. 76, 80, 752 P.2d 791, 795 (Ct.App.1988), and also contrary to the evidence. While Dr. Racca did use a 50% figure, he testified that the figure was speculative, and also used a 15% figure. Under this state of the evidence, and considering that the WCJ did not award Worker the cost of Dr. Racca's examination, we cannot say that the WCJ necessarily found the Worker's claim of 50% impairment to be correct.

The WCJ did not err in refusing at the time of the hearing to award Worker his independent medical examination costs.

### 3. *Transfer of Health Care*

█ Worker claims that he requested the WCJ to order his health care transferred from AIMS (Albuquerque Industrial Medicine Specialists) to Dr. Racca, indicating that he was dissatisfied with the AIMS treatment. He notes that Dr. Racca testified that the treating physicians provided by Employer had made the wrong diagnosis and had not treated Worker for his herniated disc. He claims that this misdiagnosis is buttressed by AIMS' referral to Dr. Stern after Dr. Racca's examination.

Relying on *Sedillo v. Levi–Strauss Corp.*, 98 N.M. 52, 644 P.2d 1041 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982), Worker argues that failure to properly diagnose and treat is tantamount to a failure to provide adequate medical care as required under NMSA 1978, Section 52–1–49 (Repl.Pamp.1991). *Sedillo* is distinguishable. In that case, the employer entirely failed to offer or provide medical services, and this Court held that it was error to deny a claim for payment of services rendered by the worker's personal physician. *Sedillo*, 98 N.M. at 54–56, 644 P.2d at 1043–45.

In this case, Employer did not fail to provide medical care. In fact, the WCJ found that Employer did provide medical care; that the care provided by Employer was adequate and satisfactory; and that, although a positive result was not obtained from the care provided by Employer, such failure was not due to the nature, quality, or type of care provided by Employer. Worker does not directly challenge these findings. *See Gutierrez v. Amity Leather Prods. Co.*, 107 N.M. 26, 30–31, 751 P.2d 710, 714–15 (Ct.App.1988) (unchallenged findings binding on appeal).

In *Bowles v. Los Lunas Schools*, 109 N.M. 100, 781 P.2d 1178 (Ct.App.), *cert. denied*, 109 N.M. 131, 782 P.2d 384 (1989), a case which Employer cites but Worker overlooks, this Court held that for a worker to recover for medical services obtained from sources not provided by the employer, the worker must prove that the employer-provided services did not produce positive results, that this failure was due to the care provided, that the worker obtained other medical care which was successful, that this care was related to the worker's work-related injury, and that the care was reasonable and necessary. *Bowles*, 109 N.M. at 108, 781 P.2d at 1186. *See generally City of Albuquerque v. Sanchez*, 113 N.M. 721, 727, 832 P.2d 412, 418 (Ct.App. 1992) (We note that the *Bowles* interpretation of Section 52–1–49 has been superseded by an amendment to that statute. However, the version of Section 52–1–49 interpreted in *Bowles* also is applicable to the instant appeal.). Based on the WCJ's find-

ings, which are not directly attacked, Worker has not met the *Bowles* standard.

### 4. *WCJ's Conclusion that Disputes over Previous Benefits Were Resolved*

■ While conceding he can cite no authority specifically on point, *see In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues raised which are unsupported by cited authority will not be reviewed on appeal), Worker argues that it was unfair for the WCJ to hold him bound by the first recommended resolution regarding Worker's previous acceptance of partial disability benefits while not holding Employer bound to the same resolution, when both parties accepted the recommended resolution. Specifically, Worker claims that he should not have been put to the test of proving medical causation. This argument is easily answered.

Worker has not shown how he was harmed by the WCJ's ruling. *See Nunez v. Smith's Management Corp.,* 108 N.M. 186, 188, 769 P.2d 99, 101 (Ct.App.1988) (illustrating two types of harmless error). Worker was able to establish causation, and he does not argue on appeal that he would have been entitled to more or different benefits had the WCJ not held him bound by the first recommended resolution. Nor does his brief show where this issue was preserved below. *See State v. Martin,* 90 N.M. 524, 527, 565 P.2d 1041, 1044 (Ct. App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977) (court will not address issues when the brief does not indicate, with appropriate record references, where the issue was preserved).

We affirm.

IT IS SO ORDERED.

DONNELLY and PICKARD, JJ., concur.